SOUTHWEST NATIONAL BANK OF DALLAS v. H. F. UNDERWOOD & COMPANY.

No. 4918. Decided February 18, 1931.
(36 S. W., 2d Series, 141.)

84

*Touchstone, Wight, Gormley & Price,* for plaintinffs in error.

The trial court, as found by the Court of Civil Appeals, having erroneously stricken out the sole affirmative defense pleaded by plaintiff in error, and said defense being duly authorized in the premises, and the trial court having thus deprived plaintiff in error of all opportunity to present proof of said defense, proper reverence for the constitutional rights of plaintiff in error in the premises demanded that prejudice from such errer be presumed, and this all the more so, as plaintiff in error was left without means of showing what evidence it could and would have produced in support of its said affirmative defense thus wrongfully stricken. Calvin Coal Co. v. Bank, 286 S. W., 901; Mutual Life Ins. Co. v. Heidel, 161 Fed., 535.

The answers of the jury to special issues 7, 9 and 17, are in such apparent conflict that they cannot support any judgment in the premises. Walker v. Lyles, 96 Texas, 21; Ablowich v. Bank, 95 Texas, 429; Pecos, etc. Ry. Co. v. Railway Commission, 193 S. W., 770; Williams v. Zang, 279 S. W., 815; Moore v. Moore, 67 Texas, 293; West Side v. McDowman, 244 S. W., 167.

Having submitted the cause to the jury on special issues and the jury having found that defendants in error were negligent in not seasonably examining the vouchers returned to them, and having further found that said negligence directly contributed to their losses, the trial court was without authority, perforce of the pertinent statutes, to render judgment in favor of defendants in error, the pertinent statutes prescribing that the judgment shall follow the findings of the jury, where these are supported by evidence. Heimer v. Yates, 210 S. W., 680.

The findings of the jury that defendants in error were negligent and that their negligence directly contributed to their losses in the premises being supported by evidence, the trial court was unauthorized, perforce of the constitutional guarantee of jury trial, to set aside the said jury findings and substitute its own findings therefor. Brown v. City Service Co., 245 S. W., 656.

The opinion of the Court of Civil Appeals, in holding that the error of the trial court in striking plaintiff in error's plea of estoppel and thus declining to permit the introduction of evidence in support of it, was harmless, is in conflict with various decisions of this court and other courts of civil appeals recognizing such defense as a valid defense in the premises, and authorizing not only the pleading thereof, but its affirmative submission to the jury, where duly pleaded and supported by the evidence. Weinstein v. Bank, 69 Texas, 38; San Antonio Bank v. Llano Bank, 92 Texas, 436; Calvin Coal Co. v. Bank, 286 S. W., 901.

*Adams & Harrell* and *W. B. Harrell,* for defendants in error.

The bank was entitled to plead its full case, but where the pleading may be stricken out, still if testimony is introduced on all issues made by the bank and jury findings are had thereon, no injury is done. It is not a material injury to be deprived of reading pleadings if testimony bearing thereon is fully developed and issues submitted thereon.

The jury having found that the bank was negligent in failing to discover the forgeries, the court was authorized to render judgment for plaintiffs, though the jury found that plaintiffs' negligence contributed to the loss. Bank v. Morgan, 117 U. S., 96; Critten v. Chemical Natl. Bank, 57 L. R. A., 529; G. H. & S. A. Ry. Co. v. Bell, 110 Texas, 106.

The uncontradicted and admitted evidence showing that the signature upon which the checks were paid was forged, there was ample evidence to support the finding of the jury that the bank's employees were negligent in not discovering it.

Mr. Commissioner RYAN delivered the opinion of the court.

H. F. Underwood and W. L. Wood, a partnership, instituted this suit in the district court of Dallas county, to recover from the Southwest National Bank of Dallas, the sum of $3,149.83 with interest at the legal rate from April 1, 1924, deposited by them with the bank and by it paid out on forged checks.

The petition charges negligence on the part of the bank, its officers, agents, and employees in failing to discover said forgeries before paying the forged checks, and that the losses to plaintiffs, because of the bank's payment thereof, were due to and directly caused by such negligence.

The bank specially pleaded that the checks were forged by one Andre, plaintiff's employee, who was in charge of their office, in possession of their books and pass books, with authority to make deposits, receive their pass books, monthly statements, and cancelled checks from the bank and receipt for same in plaintiffs' name; that said Andre as plaintiffs' agent did so receive and receipt for said statements and cancelled checks with their knowledge and consent and by their express authority, all of which led the bank to believe that Andre was their duty authorized agent and representative.

It was further specially pleaded that if certain sums of money were improperly paid out it was plaintiffs' duty to so report to the bank, and because of their failure to do so, the bank was unable to protect itself against said forgeries, which it would have done had plaintiffs examined such statements within the reasonable time prescribed by the bank's rules, wherefore plaintiffs are estopped to recover the amount of such checks.

The trial court sustained exceptions to that portion of the bank's answer pleading negligence and estoppel; the Court of Civil Appeals held that the pleading in question presented a valid defense and that the trial court erred in sustaining such exceptions, but concluded that in view of certain facts found by the jury, in their opinion, decisive of the controversy, the error was harmless and this without regard to the issues sought to be presented in the pleading.

The evidence shows that every month, beginning with the statement dated December 31, 1923, and ending with that dated March 31, 1924, Andre called for and obtained the bank's monthly statement of account and cancelled checks, and signed receipts therefor in the name of "H. F. Underwood & Company, by L. C. Andre"; he then withdrew the forged checks and placed the others in a letter file in their office; a bank statement accompanied each group of checks.

The jury found in answer to special issues submitted, that during the period from December 1, 1923, to and including March 31, 1924, the bank paid out $3,149.83 upon checks not authorized by the plaintiffs, Underwood & Company; that the bank, its officers, agents and employees were negligent in failing to discover that said checks were unauthorized by the plaintiffs, and that plaintiffs first learned during April, 1924, that the bank had made such unauthorized charges.

The jury further found that the plaintiffs were negligent in failing to discover, prior to the time that they did so discover, that the bank had charged said unauthorized check to their account; also that it was a rule or custom of the banks in Dallas, including the defendant bank, to deliver statements of their depositors' accounts to certain employees of said depositors as might call for such statements, but plaintiffs had no actual knowledge of such rule or custom, and had no knowledge of such facts and circumstances as would put men of reasonable business prudence on inquiry or notice as to the existence of such rule or custom.

The jury further found that the bank's statements of December, 1923, January and February, 1924, delivered to Andre by the bank, were placed in the files of plaintiffs in their office immediately after they were so delivered, and the failure of plaintiffs to examine said statements, directly contributed to the payment by the bank of the checks in controversy.

The trial court, on such findings, rendered judgment for the plaintiffs, Underwood and Company, which was affirmed on appeal by the

Court of Civil Appeals for the Fifth Supreme Judicial District. 295 S. W., 253.

The bank concedes its liability to the amount of forged checks paid by it until December 31, 1923, but denies liability for any forged checks drawn in the depositors' name and paid by it after that date, on the ground that it was the duty of Underwood and Company to examine the returned checks and statements rendered on December 31, 1923, and monthly thereafter, within a reasonable time and notify the bank, if they questioned the signature, or the authority of Andre to have drawn the checks in question, or the correctness of the account, failure to do which caused the bank to conclude that such checks were authorized, were properly drawn, and had the depositors' approval, and such failure was negligence and the proximate and direct cause of the bank having paid such checks. The bank therefore contends that the depositors are estopped from now questioning such payments made after December 31, 1923.

The defendants in error contend that as the bank's defense or claim against them as depositors is based on their negligence, they may defeat that claim by showing that the bank was also guilty of negligence—that is by showing that the bank was negligent in honoring the questioned checks, in the first instance, and before the depositors' neligence in failing to examine the returned checks and statements occurred.

A bank is bound to know the signatures of its customers and can not charge the amount of forged checks paid by it against the account of the depositor whose name was forged unless such payments are properly attributable to the negligence or other fault of the depositor which misled the bank into paying such forged checks. 7 C. J., p. 683, p. 688.

Where the bank is negligent in payment of forged checks, it will not be excused merely by reason of the fact that negligence is also attributable to the depositor, unless the depositor's negligence is shown to have been the proximate cause of the conduct of the bank in paying such checks and of the resultant injury to it by reason thereof.

The modern rule is thus stated by the author of Morse on Banks and Banking (5th Ed.), sec. 466:

"The point in issue has sometimes been said to be that of negligence. The drawee who has paid upon the forged signature is held to bear the loss, because he has been negligent in failing to recognize that the hand writing is not that of his customer.

"But it follows obviously that if the payee, holder, or presenter of the forged paper has himself been in default, if he has himself been guilty of a negligence prior to that of the banker, or if, by any act of his own he has at all contributed to induce the banker's negligence, then he may lose his right to cast the loss upon the banker."

The bank is liable, in any event, for the forged checks paid by it prior to the statement (with cancelled checks) of date December 31,

1923. The jury found that the plaintiffs below (Underwood and Company) were negligent in failing to discover prior to April, 1924, that the bank had charged unauthorized checks to their account, that the statements of December, 1923, January and February, 1924, were placed in their files ·immediately after they were delivered to Andre, and that their failure to examine these statements directly contributed to the payment by the bank "of any or all of said checks in controversy;" the jury also found that the bank, its officers, agents and employees, were negligent in failing to discover that unauthorized checks had been ·paid by it, but this finding is not limited to the period of time after December 31, 1923, but includes all such unauthorized checks, including those paid prior to that date.

If the bank's officers, before paying forged or altered checks, could by proper care and skill have detected the forgeries, then it cannot receive a credit for the amount of these checks, even if the depositor omitted all examination of his account. Leather Manufacturers' Nat'l Bank v. Morgan, 117 U..S., 96, 6 S. Ct., 657, 29 L. Ed., 811; 3 R. C. L., 539.

The depositor's negligence is immaterial unless it is of a kind that directly and proximately affects the conduct of the bank in the performance of its duties. Jordan-Marsh Co. v. Nat'l Shawmut Bank, 201 Mass., 397, 22 L. R. A. (N. S.), 250, 87 N. E., 740.

In Weinstein v. National Bank of Jefferson, 69 Texas, 38, 6 S. W., 171, 174, 5 Am. St. Rep., 23, the facts were, that appellant, a depositor in the bank, was absent during the period of the transactions involved in that suit, from December, 1885, to August, 1886, but his business was in charge of his brother, A. Weinstein, as his agent and attorney in fact. On February 27, 1886, and also on June 12, 1886, the cashier of the bank balanced Weinstein's pass book aud returned all checks which had been paid by the bank up to those dates respectively. In August, 1886, A. Weinstein discovered or claimed to have discovered that a number of checks which had been paid by the bank and charged to his account had been forged. The checks were embraced in the accounts balanced in the pass book and were returned with the pass book when balanced on the dates above named. The bank pleaded a general denial and also in substance that plaintiff's agent having at the dates named received the pass book and checks and failed to use due diligence to detect and denounce the forgeries, plaintiff was estopped from questioning the correctness of the account. By trial amendment, the bank alleged that by reason of the negligence and failure to examine and report any errors or forgeries therein it was debarred the right and opportunity of protecting itself, and further that if the first account had been examined and the forgeries reported, the bank would not have paid the other checks alleged to have been forged. A judgment for the bank was affirmed; the court held that a bank is not liable to a depositor for money paid out by it on forged

checks if the depositor after receiving a statement of his account, by which he is enabled to ascertain the forgery, neglects to inform the bank thereof in a reasonable time, and thereby it loses the opportunity of recovering the money which it could have secured if promptly informed, it being the duty of a depositor to know whether his account with a bank is correct or not and promptly to report a forgery when detected, and should he negligently fail to make the examination and consequent discovery (when he could have discovered it), it is as if he had expressly admitted the genuineness of the checks, and he will not be permitted to deny the fact, provided the bank be prejudiced by his failure. It was further held that an estoppel may be created not only when the party sought to be concluded knows the material facts he is charged with having represented or concealed, but also when he is in such position that he ought to have known them, so that knowledge will be imputed to him.

Judge Gaines, who wrote the opinion in that case, cited Leather Manufacturers' Bank v. Morgan, 117 U. S., 96, 6 S. Ct., 657, 29 L. Ed., 811, as sustaining the above views, but does not go to the length of holding that the law would presume that the bank was prejudiced merely by the negligence of the depositor in failing to detect and discover the forgery. Said he:

"We are not prepared to say whether such a deduction may be legitimately drawn from it (the opinion in that case) or not, but if so, we do not wish to be considered as assenting to that doctrine. We think that it is a matter for the jury under appropriate instructions from the court."

In Fifth National Bank of San Antonio v. Iron City National Bank of Llano, 92 Texas, 436, 49 S. W., 368, the facts were, that one Richardson, cashier of the Llano bank, directed the San Antonio bank to charge the former bank with the amount of two notes owing by Richardson to the latter bank, which was done. At the end of the month, as was shown to be customary among banks, the San Antonio bank sent the Llano bank a detailed statement of the account between them for the month, as it had done at the end of the previous month, among the items of which appeared the said charge as having been made in payment of Richardson's notes. This statement showed a balance due the Llano bank, which it drew out a few days afterwards. Subsequently, the Llano bank brought suit against the San Antonio bank to recover such amount, on the ground that Richardson had no authority to direct the application thereof to the payment of his individual notes. The San Antonio bank pleaded that the Llano bank was estopped from denying such authority of its cashier.

The statement sent as aforesaid was found months afterwards in the vaults of the Llano bank where such papers were usually kept by it, and it had thereon the "O. K." of its bookkeeper and certain figures by him

showing the balance in the San Antonio bank, which was drawn out as aforesaid.

Judge Denman said in the opinion in that case:

"From these facts the jury might have found that the statement was received by the Llano bank a few days after it was sent. The rule of law is well settled that it became its duty to examine same within a reasonable time and notify the San Antonio bank if it questioned the authority of Richardson to have said notes charged to its account, as it appeared from the face of said statement had been done; and that its failure to do so will estop it from denying such authority if such failure has operated to the prejudice of the San Antonio bank."

It was conceded that no notice was given until the suit was filed after Richardson had been indicted and became a fugitive from justice, but the opinion, continuing, says that had the notive been promptly given when the statement was received, the San Antonio bank might have been able (1) to show by Richardson that he had the proper authority, or (2) to have by legal proceedings or moral suasion, in some measure protected itself against loss.

So here, had the depositor within a reasonable time examined the returned statements and as a result of such examination discovered the forgeries and notified the bank, it could have protected itself, at least to the extent of the future forgeries. Calvin Coal Co. v. Bank, 286 S. W., 901.

The majority of the suits brought by depositors to recover payments made on forged or fraudulently altered checks result from the crimes of some trusted employee of the depositor and usually the court has to deal with a series of successful forgeries. In such cases, after his pass book has been balanced and returned to a depositor with any of the forged or fraudulently altered checks, the authorities practically agree that in the absence of negligence on the part of the bank, the failure of the depositor to notify the bank within a reasonable time that such checks have been forged or fraudulently altered, will, if the delay is caused by his negligence in not using due care and diligence in examining the pass book or statement and vouchers, or in giving notice, if he has discovered the forgeries, and such negligence caused injury to the bank, and the latter was thus prejudiced by such failure of the depositor, constitute a defense by the bank to the depositor's suit for the money subsequently paid out on similar checks. 3 R. C. L., secs. 167 and 168; Bank of Richmond v. Electric Co., 106 Va., 347, 56 S. E., 152, 7 L. R. A. (N. S.) 744, 117 Am. St. Rep., 1014; Brown v. Bank, 109 Va., 530, 64 S. E., 950, 17 Ann. Cases, 119. And these are matters for the jury to pass on under appropriate instructions. Weinstein v. Nat'l Bank of Jefferson, 69 Texas, 38, 6 S. W., 171, 5 Am. St. Rep., 23, 3 R. C. L., sec. 168.

In Critten v. Chemical Nat'l Bank, 171 N. Y., 219, 63 N. E., 969,

57 L. R. A., 529, the New York Court of Appeals, while holding that the duty of examining the returned statements and checks and notifying the bank of any forgeries in the drawing of such checks rests upon the depositor, it does not accept the doctrine asserted in some of the cases, that by negligence in its discharge or by failure to discover and notify the bank, the depositor either adopts the checks as genuine or ratifies their payment or estops himself from asserting they are forgeries, but does hold that if the depositor by his negligence in failing to detect forgeries in his checks and give notice thereof caused loss to the bank, either by enabling the forger to repeat his fraud or by depriving the bank of an opportunity to obtain restitution, he should be responsible for the damage caused by his default, but beyond that, his liability should not extend; that the question was not one of ratification or estoppel but of liability of the depositor to the bank based solely on the loss to the bank caused by the depositor's negligence.

So that, under either rule, it becomes a question of negligence, whether of the bank or of the depositor, and whose negligence was the proximate cause of the loss. If the depositor was negligent in failing to examine the returned checks and statements and in discovering the forgeries and so reporting to the bank, and such negligence was the proximate cause of the bank's paying the subsequently drawn checks, and this resulted in injury to the bank, then the depositor must suffer the loss; conversely, if the bank was negligent because it could by proper care and skill have detected the forgeries before paying the forged checks, and such negligence was the proximate cause of the loss, then the bank must suffer the loss.

If the bank were negligent, the plaintiffs (depositors) would be estopped from claiming against it, only because their own negligence was directly connected with the forgeries and was the proximate and not remote cause of the bank's negligence. N. Y. Produce Exchange Bank v. Houston, 169 Fed., 785.

Defendants in error cite Coleman Drilling Co. v. Bank, 252 S. W., 215, in support of their contention that the bank was negligent in, and therefore liable for, the payment of the forged checks in question and could have discovered the forgeries before payment by the exercise of ordinary care and skill, notwithstanding the depositors' negligence in failing to examine the monthly statements and discover the forgeries therein.

That case is not authority here. There it was found that although the plaintiff Coleman was guilty of subsequent negligence in failing to call for and secure his monthly statements, examine the same and discover the forgeries among the cancelled checks, the bank's employees were primarily negligent in failing to discover the forgeries before payment of the checks. Under such a finding, of course, the depositor's subsequent negligent was not the proximate cause of the bank's prior negligence.

It follows, therefore, that the bank's answer presented a valid defense

and the trial court erred in sustaining exceptions thereto. The Court of Civil Appeals erred in holding that such action of the trial court was harmless, in view of the jury's findings, without regard to the issues sought to be presented in such answer.

There can be no harmless error where the affirmative defenses of a defendant, acknowledged to be valid, are thus stricken and he is denied the opportunity to present evidence in support of such defenses and to have same affirmatively submitted to the jury.

The judgments below are reversed and the cause remanded for another trial, in accordance with this opinion.

The foregoing is adopted as the opinion of the Supreme Court, and the judgments of the District Court and Court of Civil Appeals are reversed, and the cause remanded.

C. M. CURETON, Chief Justice.